No. 24-1293

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

NATIONAL ASSOCIATION OF INDUSTRIAL BANKERS, AMERICAN FINANCIAL SERVICES ASSOCIATION, and AMERICAN FINTECH COUNCIL,

*Plaintiffs-Appellees*,

v.

PHILIP J. WEISER, in his official capacity as Attorney General of the State of Colorado, and MARTHA FULFORD, in her official capacity as Administrator of the Colorado Uniform Consumer Credit Code,

*Defendants-Appellants.*

On Appeal from the United States District Court for the District of Colorado, No. 1:24-cv-00812-DDD-KAS, Hon. Daniel D. Domenico

## BRIEF OF FEDERAL DEPOSIT INSURANCE CORPORATION AS AMICUS CURIAE IN SUPPORT OF THE PETITION FOR REHEARING EN BANC

DOMINIC A. ARNI
J. SCOTT WATSON
MICHELLE OGNIBENE
Federal Deposit Insurance
 Corporation
3501 Fairfax Drive, D-7144
Arlington, VA 22226
(703) 562-2121
mognibene@fdic.gov

*Attorneys for Amicus FDIC*

December 16, 2025

# TABLE OF CONTENTS

                                                                                                     **Page**

TABLE OF AUTHORITIES ................................................................................ ii

INTEREST OF THE AMICUS AND SUMMARY OF ARGUMENT .................... 1

ARGUMENT .......................................................................................................... 3

THE COURT SHOULD GRANT REHEARING EN BANC BECAUSE THE MAJORITY'S INTERPRETATION OF SECTION 525 IS INCONSISTENT WITH THE STATUTORY FRAMEWORK AND THIS MATTER INVOLVES A QUESTION OF EXCEPTIONAL IMPORTANCE TO CONSUMERS AND STATE-CHARTERED BANKS. ................................................................................ 3

CONCLUSION ....................................................................................................... 6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Tyler v. Cain*,
 533 U.S. 656 (2001)..................................................................................4

*Watters v. Wachovia Bank, N.A.*,
 550 U.S. 1 (2007)......................................................................................3

**Statutes**

Depository Institutions Deregulation and Monetary Control Act of 1980,
 Pub. L. No. 96-221, 94 Stat. 132 (1980) ................................................*passim*

**Rules**

Fed. R. App. P. 29(b)(2)........................................................................................1

**Other Authorities**

Office of the Comptroller of the Currency, National Banks and the Dual Banking
 System (Sept. 2003).....................................................................................3

Office of the Comptroller of the Currency, News Release
 2025-122 (Dec. 9, 2025)...............................................................................5

# INTEREST OF THE AMICUS AND SUMMARY OF ARGUMENT

As a federal agency, *amicus curiae* the Federal Deposit Insurance Corporation (FDIC) is authorized to file this brief under Federal Rule of Appellate Procedure 29(b)(2). The FDIC's interest in this matter springs from its role as the primary federal regulator for over 2,700 state-chartered insured banks that are not members of the Federal Reserve System. The FDIC has a vital interest in maintaining a strong and vibrant dual-banking system, which requires a level playing field for state-chartered institutions to compete with national banks.

By allowing Colorado to set the interest rate that state-chartered banks located outside Colorado can charge borrowers in Colorado, the panel decision has radically altered the interest rate parity approach established by Congress in Section 521 of the Depository Institutions Deregulation and Monetary Control Act of 1980 (DIDMCA).[1] In doing so, the majority's opinion imposes significant financial and operational burdens on state-chartered institutions that do not apply to national banks. Section 521 helps to ensure that state-chartered banks can compete with national banks by allowing state-chartered institutions the same right to export their state's interest rates as national banks enjoy. This provision ensures that consumers have more choices in the marketplace by allowing out-of-state banks to offer loans to borrowers in other states, like Colorado. Although Section

---

[1] Pub. L. No. 96-221, 94 Stat. 132, 164 (1980) (codified at 12 U.S.C. § 1831d).

525 of DIDMCA authorizes a state to opt out of Section 521 for loans "made" in that state, the majority's expansive interpretation of when a loan is "made" in a state is inconsistent with the statutory framework and contravenes its purpose.

This is a question of exceptional importance to state-chartered banks, which are increasingly reliant on lending across state lines as a result of technological, operational, and competitive changes. The majority's interpretation expands the reach of a state's opt-out to any state-chartered bank serving Colorado borrowers, regardless of where that bank is located. It imposes significant financial and operational consequences on state-chartered banks located outside Colorado that seek to offer loans to consumers in Colorado, making state-chartered banks less able to compete with national banks and radically altering Congress's goals for DIDMCA and the purpose of the opt-out provision. If the panel decision is allowed to stand, it may encourage more states to opt out, resulting in the opt-out exception swallowing the general rule of parity and threatening the ability of state-chartered banks to offer loans to consumers in other states and the integrity of the dual banking system. Given these consequences for the financial system, the FDIC supports the Petitioners' request for rehearing by the full court.

**ARGUMENT**

**THE COURT SHOULD GRANT REHEARING EN BANC BECAUSE THE MAJORITY'S INTERPRETATION OF SECTION 525 IS INCONSISTENT WITH THE STATUTORY FRAMEWORK AND THIS MATTER INVOLVES A QUESTION OF EXCEPTIONAL IMPORTANCE TO CONSUMERS AND STATE-CHARTERED BANKS.**

Since recognition of the first national banks over 160 years ago, the nation has had a dual banking system in which banks may choose to be chartered and primarily regulated by either a state or the federal government. *See Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 10 (2007). The dual banking system gives each chartering authority the ability to make different policy choices and is a significant contributor to the dynamism of the U.S. banking industry.[2]

Over the years, Congress has enacted essential measures, including Section 521 of DIDMCA, to ensure the vitality of this system by supporting competitive equality between national banks and state-chartered banks. Clearly, Section 525 allows a state to opt out of the interest rate parity established by Section 521 for a state bank chartered in its own state. However, nothing in the text or purpose of Section 525 suggests that Congress intended to allow a state's opt-out to extend to

---

[2] *See* Office of the Comptroller of the Currency, National Banks and the Dual Banking System, at 10 (Sept. 2003), available at https://www.occ.treas.gov/publications-and-resources/publications/banker-education/files/pub-national-banks-and-the-dual-banking-system.pdf ("a separate system of state banks allows the states to serve as laboratories for innovation and change") (internal quotation marks omitted); *see also* State Bankers Ass'ns Amicus Br. 9-10, Dkt. #88.

state banks chartered in other states solely because the borrower is located in the opt-out state. Such an interpretation is contrary to the fundamental benefits Congress intended Section 521 to afford to state-chartered banks located in states that have elected *not* to opt out of that section's protections. This presents a question of exceptional importance because if the panel decision is permitted to stand, it would enable any state to thwart the ability of state-chartered banks to compete with national banks. The result would be fewer loan choices for consumers in those states.

The majority's holding states that a loan is "made" in an opt-out state if either the lender *or* the borrower is located in that state. The majority's reasoning rests on what the majority characterizes as the "unambiguous" text of the statute. Op. at 35. The word "made," however, is not a term of art in statutory construction and does not have a fixed meaning. *Tyler v. Cain*, 533 U.S. 656, 662 (2001) ("As commonly defined, 'made' has several alternative meanings, none of which is entirely free from ambiguity."). Accordingly, the term "made" cannot be interpreted "in a vacuum," but must be interpreted in "context" and "with a view to [its] place in the overall statutory scheme." *Id*. (internal quotation marks and citation omitted).

As the dissent explained, the context in which Section 525 was enacted was characterized by state-chartered banks that were lending primarily on an intrastate

4

basis, and DIDMCA's predecessors, the Brock Bill and Borrowers Relief Act, focused on intrastate banking.  Dissent 21-25.  This context disfavors a reading of Section 525 that would allow states to "discard the policy of competitive equality" for state-chartered banks outside the opt-out state.  Dissent at 11.

At the same time, the banking industry has evolved since DIDMCA was enacted, making the proper construction of Section 525 exceptionally important to consumers and the parity of national and state-chartered banks.  Advancements in technology and operations, along with changing competitive forces and innovation in the financial sector, have increasingly led state-chartered banks to lend beyond the borders of the states in which they are located.  To enable a level playing field on which state-chartered institutions can compete with national banks in such lending—a primary goal of DIDMCA through Section 521—state-chartered banks cannot be subject to a patchwork of interest rate caps depending only on the borrower's location.  The majority's interpretation upends the balance Congress established in DIDMCA and "risks undermining state banks' ability to effectively administer multi-state lending programs and, perhaps more importantly, disadvantages state banks that wish to lend in Colorado compared to national banks and Federal savings associations."[3]

---

[3] OCC News Release 2025-122 (Dec. 9, 2025), available at https://occ.gov/news-issuances/news-releases/2025/nr-occ-2025-122.html.

There is no evidence that Congress intended Section 525 to give opt-out states the unprecedented power to regulate interest rates for state-chartered banks in other states.

## CONCLUSION

For the foregoing reasons, this Court should grant the Appellees' petition for rehearing *en banc*.

Date: December 16, 2025

Respectfully submitted,
Dominic A. Arni
Assistant General Counsel
J. Scott Watson
Senior Counsel
<u>s/Michelle Ognibene</u>
Michelle Ognibene
Counsel
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive, VS-D-7144
(703) 562-2121
mognibene@fdic.gov

*Attorneys for Amicus Curiae Federal Deposit Insurance Corporation*

# CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 29(b)(4) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains 1,176 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point, Times New Roman font.

Date: December 16, 2025         <u>s/Michelle Ognibene</u>