No. 24-1293

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

PHILIP J. WEISER, in his official capacity as Attorney General of the State of Colorado, and MARTHA FULFORD, in her official capacity as Administrator of the Colorado Uniform Consumer Credit Code,

      Defendants – Appellants,

v.

AMERICAN FINTECH COUNCIL, NATIONAL ASSOCIATION OF INDUSTRIAL BANKERS, and AMERICAN FINANCIAL SERVICES ASSOCIATION,

      Plaintiffs – Appellees.

On Appeal from the United States District Court, District of Colorado
The Honorable Daniel D. Domenico
District Judge

District Court Case No. 1:24-cv-00812-DDD-KAS

## DEFENDANTS-APPELLANTS' RESPONSE TO PETITION FOR REHEARING EN BANC

PHILIP J. WEISER
Attorney General
KEVIN BURNS*
Senior Assistant Attorney General
PHILIP SPARR*
Assistant Attorney General
MICHAEL D. McMASTER*
Assistant Solicitor General

Colorado Department of Law
1300 Broadway, 10th Floor
Denver, Colorado 80203
720-508-6000
*Counsel of Record
*Attorneys for Defendants-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................ii

GLOSSARY ..................................................................................... v

INTRODUCTION ............................................................................ 1

STATEMENT OF THE CASE .......................................................... 3

ARGUMENT ................................................................................... 4

   I.   The Panel Opinion Does Not Conflict with the Eighth Circuit ....... 5

   II.   The Panel Opinion Correctly Applies Supreme Court Precedent on Express Preemption. ........................................................ 11

   III.   The Panel Opinion is Routine Statutory Interpretation, Not a Question of Exceptional Public Importance. ..................................... 16

CONCLUSION ............................................................................... 20

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT .... 21

# TABLE OF AUTHORITIES

**Cases**

*Altria Grp. v. Good,*
  555 U.S. 70 (2008) .................................................................. 14

*Atl. Cleaners & Dyers v. United States,*
  286 U.S. 427 (1932) .................................................................. 6

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.,*
  965 F.3d 792 (10th Cir. 2020) .................................................. 6

*Chamber of Commerce v. Whiting,*
  563 U.S. 582 (2011) ................................................ 12, 13, 14, 15

*Good Samaritan Hosp. v. Shalala,*
  508 U.S. 402 (1993) ........................................................... 10, 11

*Jessup v. Pulaski Bank,*
  327 F.3d 682 (8th Cir. 2003) ................................ 2, 5, 6, 7, 8, 9, 11

*Johnson v. Bank of Bentonville,*
  122 F. Supp. 2d 994 (W.D. Ark. 2000) ...................................... 9

*Loper Bright Enterprises v. Raimondo,*
  603 U.S. 36 (2024) .............................................................. 8, 11

*Meade v. Avant of Colorado, LLC,*
  307 F. Supp. 3d 1134 (D. Colo. 2018) .................................... 19

*Missouri v. Jenkins,*
  495 U.S. 33 (1990) .................................................................. 1

*Nat'l Ass'n of Indus. Bankers v. Weiser,*
  159 F.4th 694 (2025) ... 1, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19

*Pereira v. Sessions,*
  585 U.S. 198 (2018) ............................................................. 15

*Puerto Rico v. Franklin California Tax-free Tr.*,
579 U.S. 115 (2016) ....................................................... 12, 14

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*,
580 U.S. 405 (2017) ............................................................... 12

*Suncor Energy (U.S.A.), Inc. v. Bd. of Cnty. Comm'rs of Boulder Cnty.*,
141 S. Ct. 2667 (2021) ............................................................ 6

*Wyeth* v. *Levine*,
555 U.S. 555 (2009) .............................................................. 15

**Statutes**

12 U.S.C. § 1831d .......................... 1, 3, 4, 5, 6, 8, 9, 10, 12, 13, 14, 17, 18

12 U.S.C. § 1831d(a) ........................................... 1, 3, 4, 10, 16

12 U.S.C. § 1831u(f) ................................................................ 9, 10

12 U.S.C. § 1831u(f)(1) ............................................................ 7, 10

12 U.S.C. § 1831u(f)(1)(A) ........................................................ 10

12 U.S.C. § 1831u(f)(2) ............................................................ 7, 9

12 U.S.C. § 1831u(f)(2)(A)(i) ................................................... 10

12 U.S.C. § 85 ............................................................................ 16

Colo. Rev. Stat. § 5-13-106 ....................................................... 4

Colo. Rev. Stat. § 5-2-201 ........................................................ 18

**Rules**

10th Cir. R. 40.1(B) ........................................................... 1, 4, 16

Fed. R. App. Proc. 40(b)(2)(C) .................................................. 5

**Other Authorities**

Assurance of Discontinuance, *In re Transp. All. Bank, Inc.* (Dec. 6, 2022) ............................................................................ 17, 19

# GLOSSARY

| | |
|---|---|
| DIDA | Depository Institutions Deregulation and Monetary Control Act of 1980, Pub. L. No. 96-221, 94 Stat. 132 (1980) |
| FDIC | Federal Deposit Insurance Corporation |
| NBA | National Bank Act, 12 U.S.C. § 21, *et seq.* |
| OCC | Office of the Comptroller of the Currency |
| UCCC | Colorado Uniform Consumer Credit Code, Colo. Rev. Stat. § 5-1-101, *et seq.* |

# INTRODUCTION

This appeal concerns a routine issue of statutory interpretation: the meaning of a provision in the Depository Institutions Deregulation and Monetary Control Act of 1980 (DIDA). DIDA preempts state interest rate caps. 12 U.S.C. § 1831d(a). But § 1831d(a) contains an important exception: Any state can opt out for "loans made in such State." *Id.* § 1831d note (Effective Date). The Panel Opinion holds that "loans made in such State" refers to loans in which either the lender or the borrower is located in the opt-out state. *Nat'l Ass'n of Indus. Bankers v. Weiser*, 159 F.4th 694, 699 (2025), Op. 6.

The Panel Opinion does not warrant *en banc* review. "En banc review is an extraordinary procedure intended to focus the entire court on an issue of exceptional public importance or on a panel decision that conflicts with a decision of the United States Supreme Court or of this court." 10th Cir. R. 40.1(B); *Missouri v. Jenkins*, 495 U.S. 33, 47 n.14 (1990) ("Rehearing [en] banc is a discretionary procedure employed only to address questions of exceptional importance or to maintain uniformity among Circuit decisions.").

First, the Panel Opinion does not create a circuit split. The Panel Opinion distinguished *Jessup v. Pulaski Bank*, 327 F.3d 682 (8th Cir. 2003), where the Eighth Circuit interpreted a different statute, passed nearly 20 years after DIDA. The Panel Opinion concludes that the Eighth Circuit's mode of analysis (deferring completely to an agency opinion) was out of date; the factual circumstances, statutory structure, and purpose all differed from this case; and the litany of conflicting agency opinions all merited distinguishing the Eighth Circuit opinion.

Second, the Panel Opinion correctly applied Supreme Court precedent to its analysis of an express preemption provision, focusing on the plain language. Having decided the scope of the opt-out based on its plain meaning, the Panel Opinion went on to analyze the statute's purpose and concluded it, too, supported the Panel Opinion's interpretation.

Third, the Panel Opinion's statutory interpretation does not present an issue of exceptional public importance. The Banks and *amici* raise policy concerns about what may occur in the future, which are best addressed to Congress, and cannot prevail over the statute's plain text.

And the policy conjecture ignores more than four decades of Iowa's opt-out.

## STATEMENT OF THE CASE

Colorado seeks to protect Colorado borrowers from predatory lending. But Colorado has faced repeated attempts by lenders to avoid those protections. For example, EasyPay, a financial technology company, orchestrated a rent-a-bank scheme with Utah-chartered TAB Bank to offer predatory loans to Colorado consumers. The loans went up to $5,000 and had rates as high as 199%. EasyPay and TAB Bank only stopped this predatory lending in Colorado after they entered into an agreement with Colorado. App. Vol. I at 191-92, ¶ 5, and 195-204. Because Colorado had not yet opted out, TAB Bank could rely on 12 U.S.C. § 1831d(a)'s preemption of Colorado's rate caps, allowing the bank to lend under Utah law, which does not impose any interest rate caps at all.

In 2023, the Colorado General Assembly invoked § 1831d's opt-out provision to state that "Colorado does not want" § 1831d(a) preemption

to apply in Colorado. Colo. Rev. Stat. § 5-13-106. The opt-out's effective date was July 1, 2024. *Id.*[1]

National Association of Industrial Bankers, American Financial Services Association, and American Fintech Council (collectively, the Banks) sued on March 25, 2024. The Banks named as defendants the Colorado Attorney General, and the Administrator of the UCCC (collectively, Colorado), the state officials responsible for enforcing Colorado's usury protections. The Banks moved for a preliminary injunction, which the District Court granted.

The Panel Opinion reversed the District Court. Judge Rossman concurred in part and dissented in part ("Dissent").

## ARGUMENT

Requests for review of a panel decision *en banc* are "disfavored" and *en banc* review is "an extraordinary procedure intended to focus the entire court on an issue of exceptional public importance or on a panel decision that conflicts with a decision of the United States Supreme Court or of this court." 10th Cir. R. 40.1(B).

---

[1] Consistent with the Panel Opinion, we refer to DIDA Section 521 as 12 U.S.C. § 1831d(a) and DIDA Section 525 as § 1831d's opt-out provision.

## I. The Panel Opinion Does Not Conflict with the Eighth Circuit.

The Banks first argue rehearing *en banc* is warranted because the Panel Opinion creates a circuit split with the Eighth Circuit. Rehearing *en banc* is appropriate on this basis only if "the panel decision conflicts with an authoritative decision of another United States court of appeals." Fed. R. App. Proc. 40(b)(2)(C). The Panel Opinion does not create a circuit split. The Panel Opinion's interpretation of § 1831d's opt out provision does not conflict with the Eighth Circuit's decision in *Jessup v. Pulaski Bank*, 327 F.3d 682 (8th Cir. 2003). After careful analysis, the Panel Opinion "disagree[d] with the Banks' characterization of *Jessup* and [found]… it inapplicable to this case for several reasons." *Weiser*, 159 F.4th at 725, Op. at 62. The Panel Opinion correctly distinguished *Jessup* because it interpreted a different statute and its mode of analysis is outdated under Supreme Court precedent, the facts surrounding the statute at issue differed from DIDA, and the Eighth Circuit's reliance on an OCC letter was not warranted because it was one of many conflicting agency opinions.

The Panel Opinion distinguishing a decision by a sister circuit of a similar, but inapposite statute, does not create a circuit split warranting

*en banc* review. Both the Panel Opinion and Dissent acknowledge the statutory interpretation question of § 1831d's opt out provision is one of first impression. 159 F.4th at 711, Op. 33, and *id.* at 727, Dissent 1. The Panel Opinion thoroughly examined *Jessup* and determined it is "unpersuasive." *Jessup* involved a different statute using some of the same words as the § 1831d's opt-out, and, as this Circuit has held, "[w]hile 'there is a natural presumption that identical words used in different parts of the *same act* are intended to have the same meaning,' no such presumption applies to the same word used in different statutes." *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.,* 965 F.3d 792, 807–08 (10th Cir. 2020), *judgment vacated on other grounds*, 141 S. Ct. 2667 (2021) (quoting *Atl. Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932)). The Panel Opinion reviewed the statute at issue in *Jessup*, which is separated from § 1831d's opt out by nearly two decades. The Panel Opinion distinguishing an inapposite case does not create a circuit split and does not warrant *en banc* review.

In *Jessup*, a Texas resident applied for a credit card from an Arkansas bank, then sued the bank for charging interest at a rate higher than permitted under both Arkansas law and Texas law. 327 F.3d at 683–

84. The bank argued the rate was permissible because Gramm-Leach-Bliley Financial Modernization Act of 1999, 12 U.S.C. § 1831u(f)(2), "allows an Arkansas bank to charge interest at a rate allowed by the state of any out-of-state bank with a branch office in Arkansas, except when the Arkansas bank has 'made' the loan 'in any State other than [Arkansas].'" *Id.* at 683–84. The borrower argued his loan fell into the exception and was "made" in Texas. *Id.* at 684.

The Eighth Circuit conducted no independent statutory analysis, instead deferred entirely to an opinion letter by the OCC, interpreting yet another statute (Riegle–Neal Interstate Banking and Branching Efficiency Act of 1994). *Id.* at 684–85. The Eighth Circuit relied on the letter, finding the letter indicates "that a loan is made at the location of the branch that approves the loan, extends credit, and disburses the funds." *Id.* at 685. Applying *Chevron* deference, the letter was the exclusive basis for the Eighth Circuit's holding that "all of Pulaski Bank's branches were in Arkansas, and applying the OCC letter criteria, we agree with the district court that Jessup's loan was 'made' in Arkansas and that section 1831u(f)(1), therefore, covered Pulaski Bank's extension of credit to Jessup." *Id.*

The Panel Opinion rejected the Banks' argument that distinguishing *Jessup* creates a circuit split, and held *Jessup* was "inapplicable" for compelling reasons. First, the Opinion rejects "the Eighth Circuit's mode of analysis under outdated law." 159 F.4th at 725, Op. 62. The Eighth Circuit conducted no independent statutory analysis and merely relied on the OCC letter.[2] The Panel Opinion, on the other hand, did not rely on agency interpretations because the plain language of the statute resolved the meaning of § 1831d's opt-out provision. 159 F.4th at 712-21, Op. 34–53. While the Supreme Court did not call into question all cases decided under the *Chevron* framework in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412 (2024), the Panel Opinion

---

[2] The FDIC, in its *amicus* supporting Colorado's position before the District Court, pointed out the perils of the Eighth Circuit's reliance on the agency interpretation, noting "the parties did not brief the court on all possible nuances of the OCC's three-part test, and the court may not have reached the same conclusion had those nuances been highlighted and briefed. For example, the court was not informed that applying the three-part test to a different set of facts where all three functions were performed at offices (not branches) outside Arkansas would lead to the untenable result that a loan is 'made' in Arkansas even if the bank performed all three lending functions *outside* of Arkansas and the borrower entered into the transaction *outside* of Arkansas." App. Vol. I 142, 162–63 (Doc. 38-1, 15–16) (emphasis in original).

appropriately found *Jessup*'s reasoning wanting. 159 F.4th at 725, Op. 62.

Second, the Panel Opinion distinguished *Jessup* because of its distinct statutory framework. That statute, adopted nearly two decades after DIDA, has a different structure and serves a different purpose: Section 1831u(f) allows Arkansas state-chartered banks (and national banks located in Arkansas) to charge the higher of the Arkansas rate or *another* state's interest cap, where a bank located in that other state has a *branch* in Arkansas.[3]

The specific statutory purpose of § 1831u(f) differs from the federalism considerations the Panel Opinion recognized in § 1831d. *Weiser*, 159 F.4th at 723, Op. 58 ("The plain language and legislative history of § 1831d's opt-out provision make clear that Congress had intended to allow states to override § 1831d and reassert their historic power over interest rates for state banks."). The Panel Opinion distinguishes the factual circumstances of the later-enacted Gramm-Leach-Bliley Act, where the provision affected only one state with a

---

[3] Section 1831u(f) applies only to Arkansas. *Johnson v. Bank of Bentonville*, 122 F. Supp. 2d 994, 997–98 (W.D. Ark. 2000).

unique constitutional provision, where all states are opted in, and Congress's focus was on the competitive disadvantage from the presence of out-of-state bank *branches* in the state. *Id.* at 725, Op. 62–63.

The Panel Opinion analyzed the statutory structure noting "Subsection (f)(1) expressly focuses on where a loan is 'made' in the context of the lender to determine the rate that the lender can legally charge on the loan." *Id.* at 725, Op. 63 (citing § 1831u(f)(1)(A) ("any loan or discount made ... *by ... any insured depository institution*" (emphasis added)). The Panel Opinion distinguished the statutory structure, noting that "[u]nlike § 1831d and its opt-out provision, § 1831u(f)(2)(A)(i)'s use of 'made' invokes the 'home State' definition from § 1831u(f)(1), which focuses on the bank's location." *Id.*, Op. 62–63. The Panel Opinion highlights that § 1831d's opt-out provision contains no "express reference to the lender's location" — "an omission made even more glaring by the express references in § 1831d(a) and § 1831u(f)." *Id.*, Op. 63. The Banks ignore the Panel Opinion's careful discussion of the different statutory structures.

Third, the Panel Opinion rejected reliance on contradictory and inconsistent agency interpretations. *Id.* at 723-24, Op. 59–61 (citing *Good*

*Samaritan Hosp. v. Shalala*, 508 U.S. 402, 417 (1993); *Raimondo*, 603 U.S. 386). Indeed, in its *amicus* in support of rehearing *en banc*, the FDIC has, without any acknowledgement (let alone explanation), changed its position from its *amicus* before the District Court (App. Vol. I at 142–66), and the panel (Doc. 59). As the Panel Opinion noted, the OCC letter the Eighth Circuit entirely relied on is just one in a "litany of conflicting agency interpretations before us." 159 F.4th at 725, Op. 63–64.

Finally, the Dissent does not rely on *Jessup* or contend the Panel Opinion creates a circuit split. Distinguishing an inapposite case from the Eighth Circuit interpreting a different statute does not create a circuit split and is not a basis for rehearing *en banc*.

## II. The Panel Opinion Correctly Applies Supreme Court Precedent on Express Preemption.

Attempting to create an issue for rehearing *en banc*, the Banks misconstrue the Panel Opinion's preemption analysis, arguing that the Panel Opinion's holding was not based on the plain text of the express preemption provision. The Supreme Court held in 2016 that "because the statute 'contains an express pre-emption clause,' we do not invoke any presumption against pre-emption but instead 'focus on the plain wording of the clause, which necessarily contains the best evidence of Congress'

11

pre-emptive intent.'" *Puerto Rico v. Franklin California Tax-free Tr.*, 579 U.S. 115, 125 (2016) (quoting *Chamber of Commerce v. Whiting*, 563 U.S. 582, 594 (2011)). The Supreme Court in *Franklin* reached this holding by quoting its own 2011 decision, *Chamber of Commerce v. Whiting*. The Panel Opinion quoted *Chamber of Commerce* and applied its holding faithfully.

The Panel Opinion's holding, located in Section I.B.1, is "focus[ed] on the plain wording" of § 1831d. *Weiser*, 159 F.4th at 712, Op. 33 (quoting *Chamber of Commerce*, 563 U.S. at 594). Section I.B.1 of the opinion is entirely focused on the text and does not apply any presumptions throughout its entire textual analysis. Section I.B.1 begins by observing that "[l]ike any statutory-interpretation case, we 'begin and end our inquiry with the text, giving each word its ordinary, contemporary, common meaning.'" *Id.* at 712, Op. 34 (quoting *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017)). The Panel Opinion concludes the text is unambiguous. *Id.*, Op. 34. The Panel Opinion explains why the District Court's analysis departed from the statute's text and notes "[o]ur reading comports with the text of the statute as

written, without any added or substituted words that the district court used to reach a different interpretation." *Id.* at 713, Op. 37.

The Panel Opinion holds "[t]he plain language of the statute therefore shows that a state's decision to opt out of § 1831d for 'loans made in such State' encompasses loans in which either the lender *or* the borrower is located in the opt-out state." *Id.* at 714, Op. 38–39 (emphasis in original). The Panel Opinion notes "[b]ecause the plain language unambiguously supports Defendants' reading of § 1831d, we need not engage in further analysis" but "delve[s] deeper" because the District Court reached a contrary conclusion. *Id.*, Op. 39. The Panel Opinion quoted and followed *Chamber of Commerce* and, contrary to the Banks' assertion, did not "ignore Supreme Court precedent." Petition at 17.

Only after reaching its holding based on plain text, consistent with Supreme Court precedent, does the Panel Opinion assume for sake of completeness that the statute is ambiguous (it is not). The Panel Opinion is clear that this analysis is not necessary to its holding, observing "[t]he statute's plain language resolves this issue, but we turn to other modes of statutory interpretation as well for a thorough review." *Weiser*, 159 F.4th at 721, Op. 53. Based on these "other modes," the Panel Opinion

concludes it would reach the same result. *Id.*, Op. 53 ("*Even if we were to assume* that the text of § 1831d's opt-out provision was ambiguous, we would still reach the same result." (emphasis added)).

Applying these "other modes," in Section I.B.2, the Panel Opinion reviews the statutory purpose. *Id.*, Op. 53. The Banks cite no precedent from this Circuit or the U.S. Supreme Court holding that after conducting the analysis of the plain language called for by *Franklin* and *Chamber of Commerce*, that the panel cannot further examine other sources of Congressional intent, and determine that they, too, indicate that the federal law does not preempt state law. Here, in examining the statute's purpose, the Panel Opinion applied U.S. Supreme Court precedent concerning express preemption where the text is ambiguous. In these situations, the court ordinarily applies the reading that disfavors preemption because otherwise the statute would preempt historic police powers of the states. *Id.* at 721, Op. 53 (citing *Altria Grp. v. Good*, 555 U.S. 70, 77 (2008)).

The Banks argue this second mode of analysis "shaped the outcome of the case." Petition at 17. That is simply not true. The Panel Opinion holds "ultimately, the *plain language of the statute*, which we have

construed to include the lender's location and the borrower's location, *controls our interpretation.*" 159 F.4th at 718, Op. 46 (emphasis added) (citing *Pereira v. Sessions*, 585 U.S. 198, 219 (2018)). The Panel Opinion followed *Chamber of Commerce*, and held the plain language of the statute, the best evidence of Congress's intent, did not preempt state law.

Nor does the Dissent take issue with the Panel Opinion's additional mode of analysis, instead questioning only whether the area was historically regulated by the states. *Id.* at 736 n.11, Dissent 19–20 n.11 (quoting *Wyeth* v. *Levine*, 555 U.S. 555, 565 (2009)). This is because there is no problem with the Panel Opinion's thorough, step-by-step analysis, which is entirely consistent with precedent from the U.S. Supreme Court and this Circuit. No future panel will be confused by the Panel Opinion's step-by-step approach. Granting *en banc* review on this basis would merely discourage other panels from thoroughly explaining their reasoning.

No rehearing *en banc* is warranted because the Panel Opinion followed Supreme Court and Circuit precedent.

### III. The Panel Opinion is Routine Statutory Interpretation, Not a Question of Exceptional Public Importance.

The Banks' tertiary argument for rehearing *en banc* is the Panel Opinion raises a question of exceptional public importance. While the Banks may disagree with Congress's policy choice to give states the authority to opt out, that disagreement does not mean that an opinion involving routine statutory interpretation is "an issue of exceptional public importance." 10th Cir. R. 40.1(B). Rehearing is not warranted on this basis either.

The Banks repeat their argument before the panel that the purpose of the opt out is to let Colorado set the maximum rate its *own* state banks can charge. Petition at 19. The Banks argue that preemption for state-chartered banks will differ from NBA preemption for national banks. Petition at 19. That is the point. Section 1831d(a) has an opt out provision. Section 85 of the NBA does not. 12 U.S.C. § 85. The Panel Opinion persuasively rejects the Banks' partial opt out argument as unmoored from the text, purpose, or legislative history, and "betrays common sense." *Weiser*, 159 F.4th at 723, Op. 58-59. Even the Dissent recognizes that a state can choose to regulate their own chartered banks more restrictively, *Id.* at 735 n.10, Dissent 18-19 n.10 ("Of course, states

may regulate their own banks."), but misses that states do not need a federal law such as § 1831d's opt-out provision to regulate their own banks. Minnesota et al., Doc. 54, at 26. The Banks then attempt to muddy the Panel Opinion's clear holding. Petition at 19–20. The Panel Opinion holds that, based on the unambiguous plain meaning of the text, "loans made in such State" refers to loans in which either the lender or borrower is located in the opt out state. 159 F.4th at 713, 714, 721, Op. 35, 38-39, 53.[4]

The Banks and *Amici* also raise concerns about administrability, but ignore Iowa's longstanding opt out. The Panel Opinion noted Iowa opted out soon after Congress passed DIDA and has remained opted out ever since. *Id.* at 702 n.12, Op. 12-13 n.12. The Panel Opinion also noted that Iowa recently enforced its rate caps against an out-of-state state-chartered bank, where the bank agreed to stop making loans in Iowa or to do so in compliance with Iowa law. *Id.* (citing Assurance of Discontinuance, *In re Transp. All. Bank, Inc.* (Dec. 6, 2022)). Iowa has

---

[4] The Dissent also attempts to draw a distinction between regulating banks and protecting borrowers. 159 F.4th at 731, Dissent 9. But the distinction is artificial: regulating what interest rate banks can charge consumers *is* protecting consumers.

maintained a consistent opt out and enforces it against out-of-state, state-chartered banks. If the Panel Opinion's interpretation of § 1831d's opt-out provision, which is consistent with Iowa's, threatened the dual banking system, then Iowa's interpretation would have already caused the challenges *amici* claim.[5] In addition, the Panel Opinion noted that nonbank lenders are subject to state interest rate caps. *Id.* at 702 n.11, Op. 12 n.11. Nonbank lenders maintain national lending programs in compliance with state laws.

Most lending by out-of-state state-chartered banks to Colorado consumers falls well below Colorado's interest rate caps and would be unaffected by Colorado's opt out under the Panel Opinion. Colorado permits lenders to charge 36% on the first $1000 financed and 21% on larger loans and open-end credit. Colo. Rev. Stat. § 5-2-201. It is only a few state-chartered banks who partner with high cost fintech lenders to evade Colorado's interest rate protections that will be affected. The Dissent's reliance on the District Court's assertion that Colorado will

---

[5] The ABA's *amicus* rehashes an argument about credit cards without citation. Doc. 136 at 8-10. Colorado explained why these arguments, and the sources cited in the ABA's amicus before the panel, were unavailing. Doc. 109 at 22 n.3.

have "only marginally more protection" is unsupported. 159 F.4th at 732 n.6, Dissent 12 n.6. All the rent-a-bank cases Colorado has brought have been against the fintech partners of state-chartered banks. App. Vol. I at 191-92, ¶ 5, and 195-204 (EasyPay and Utah state-chartered TAB Bank); *Meade v. Avant of Colorado, LLC*, 307 F. Supp. 3d 1134, 1138 (D. Colo. 2018) (fintech Avant and Utah state-chartered bank WebBank); *Weiser*, 159 F.4th at 702 n.12, Op. 12-13 n.12 (citing Iowa's Assurance of Discontinuance, *In re Transp. All. Bank, Inc.* (Dec. 6, 2022), an agreement with Utah state-chartered TAB Bank and a fintech partner).

Nor do the *Amici* present arguments that warrant rehearing. The FDIC supported the same position as Colorado in the District Court (App. Vol. I, 142–66) and before the panel (Doc. 69). But then it withdrew its *amicus* before the panel (Doc. 115), and now argues for rehearing, without acknowledging or explaining its change in position. Doc. 146. The FDIC raises policy arguments based on hypothetical actions by other states that *may* cause operational challenges. Doc. 146 at 2. The OCC, the prudential regulator for *national banks*, raises policy arguments

about operational difficulties and uncertainty that do not merit rehearing as they are appropriately addressed to Congress. Doc. 147.[6]

## CONCLUSION

The Petition for Rehearing En Banc should be denied.

Dated: January 21, 2026

PHILIP J. WEISER
Attorney General

/s/ *Michael D. McMaster*

MICHAEL D. McMASTER*
Assistant Solicitor General
KEVIN BURNS*
Senior Assistant Attorney General
PHILIP SPARR*
Assistant Attorney General
Telephone: 720-508-6000
E-Mail: michael.mcmaster@coag.gov
Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203
*Counsel of Record for Defendants-Appellants*

---

[6] Utah leads 20 states in reiterating (or repeating verbatim) policy arguments raised before the panel. Doc. 148 and Doc. 87. Neither the Panel Opinion nor the Dissent mentioned them. Minnesota led 13 states and D.C. in support of Colorado's position before the panel. Doc. 47.

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

This brief complies with the type-volume limitation of Fed. R. App. P. 40(d)(3) because this brief contains **3,894** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2008 in 14-point Century Schoolbook.

Dated: January 21, 2026

PHILIP J. WEISER
Attorney General

*/s/ Michael D. McMaster*
MICHAEL D. McMASTER*
Assistant Solicitor General
KEVIN BURNS*
Senior Assistant Attorney General
PHILIP SPARR*
Assistant Attorney General
Telephone: 720-508-6000
E-Mail: michael.mcmaster@coag.gov
Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203
*Counsel of Record for Defendants-Appellants*